COPY

# COMMERCIAL TERM NOTE

Date: April 27, 2007                                   Amount:  $1,900,000

Final Installment Due Date: April 27, 2017            Loan No. 5020900922

Promise to Pay.  For value received, the undersigned ("Borrower") promise(s) to pay to the order of **Republic Bank** (the "Bank"), at 29225 Chagrin Boulevard, Pepper Pike, Ohio 44122, the sum of One Million Nine Hundred Thousand U.S. Dollars ($1,900,000) and to pay interest on the unpaid balance at the Note Rate (as defined below) until either an Event of Default (as defined below) occurs or this Note becomes due, whether by default, demand or maturity, and thereafter at a rate equal to the Note Rate plus 5% per annum.  In no event shall the interest rate exceed the maximum rate allowed by law.

Interest Rate (LIBOR/Fixed)/Prepayment Premium.  The "Note Rate" shall mean a variable rate per annum (the "Variable Rate") equal to the Libor Index in effect at the date of this Note plus 2.25% per annum, until the first Libor Adjustment Date, and on the first and each subsequent Libor Adjustment Date, the Variable Rate shall be adjusted to equal the Libor Index in effect for such Libor Adjustment Date plus 2.25% per annum.  For any Libor Adjustment Date, the "Libor Index" means the London Interbank Offered Rate (One Month) as reported by any source chosen by the Bank on such date.  "Libor Adjustment Date" means the first business day in each month following the date of this Note.  In the event the London Interbank Offered Rate (One Month) ceases to be reported and is otherwise not readily determinable, the Libor Index shall mean a published rate chosen by the Bank comparable to the London Interbank Offered Rate (One Month).

Notwithstanding the foregoing, provided that the Borrower is not then in default under this Note or any other Loan Documents, the Borrower shall have the option (by written notice to the Bank) at any time during the term of this Note to fix the Note Rate at the "Fixed Rate" set forth below, for the remainder of the term of this Note.  The effective date of the conversion to the Fixed Rate (the "Fix Date") shall be the first day of the next calendar month or interest period (as elected by the Bank) which is at least ten (10) days after Borrower's written notice to the Bank of its election to fix the Note Rate.  If the Borrower so elects to fix the Note Rate, the "Fixed Rate" will be determined as follows:  if the Fix Date occurs before the date which is five (5) years after the date of this Note (the "Fixed Rate Adjustment Date"), then the Fixed Rate will be equal to the then-current "Remaining Five Year Index" plus 2.35% per annum from the Fix Date to the Fixed Rate Adjustment Date, at which time the interest rate will be adjusted to the then-current "Five-Year Index" plus 2.35% per annum for the final five (5) years of this Note.  If the Fix Date occurs after the Fixed Rate Adjustment Date, the Fixed Rate will be equal to the then-current Remaining Five Year Index plus 2.35% per annum from the Fix Date through the Maturity Date of this Note.

For purposes of this Note, the "Five-Year Index" means the average of the five (5) year "Constant Maturity Treasury" rates (reported by any source chosen by the Bank) for the week immediately preceding the week in which the interest rate is fixed.  The "Remaining Five Year Index" means the average of the "Constant Maturity Treasury" rates (reported by any source chosen by the Bank) having a maturity which is closest to the period between the Fix Date and

the Fixed Rate Adjustment Date or the Maturity Date, as applicable, for the week immediately prior to the week in which the interest rate is fixed.

Interest shall be calculated for the actual number of days the principal is outstanding on the basis of a 360 day year. Upon any change in the Note Rate, the Bank, at its sole option, may change the amount of any periodic installment payment which includes interest to an amount which, applying the new Note Rate, will amortize the outstanding principal balance over the remainder of the assumed amortization period used to calculate such periodic installment payment. NO SUCH CHANGE IN PERIODIC INSTALLMENT PAYMENT AMOUNT SHALL CHANGE THE MATURITY DATE OR ANY OTHER TERM OF THIS NOTE.

This Note may be prepaid in whole or in part only upon payment to Bank of prepayment consideration equal to one percent (1.00%) of the principal amount being prepaid, in accordance with this paragraph. No prepayment consideration shall be due if: the prepayment is made during the last 90 days prior to the Maturity Date; or the amount being prepaid (together with all amounts prepaid for the immediately preceding twelve months) does not exceed 20% of the outstanding principal balance of this Note. All prepayments will be applied to this Note in the reverse order of which the principal payments would have been due under this Note's principal amortization schedule. In other words, if this Note requires multiple principal payments, then as opposed to prepaying the next principal payment due, the prepayment will be applied beginning with the final principal payment due on this Note. If the Bank exercises its right to accelerate the payment of this Note prior to the Final Installment Due Date, the undersigned will pay to the Bank, in addition to the other amounts then due on this Note, the prepayment consideration described above which would be due as of the date of acceleration of this Note.

Notwithstanding the preceding paragraph, if the Borrower pays a prepayment premium for the prepayment in full of the entire principal balance of this Note under the preceding paragraph, such premium shall, upon payment, be deposited in escrow in an account maintained at and controlled by the Bank for a period of six (6) months after payment. If, during such six (6) month period, the Borrower closes on a new loan from the Bank (or its affiliate) for a similar commercial project and in a similar loan amount to the loan evidenced by this Note (as determined by the Bank), the Bank shall refund the escrowed prepayment premium to the Borrower at the closing of such new loan. If Borrower does not so close a new loan from the Bank within such six (6) month period, the escrowed premium shall be released to the Bank immediately upon the expiration of such six (6) month period.

Payments. This Note shall be payable in 120 consecutive monthly installments beginning on the 27th day of May, 2007, and continuing on the same day of each subsequent month through the Maturity Date. The amount of each installment, except the final installment, shall be as follows:

(a)    The first 12 monthly installments after the date of this Note shall be payments of interest only at the applicable Note Rate on the principal balance of this Note.

(b)    Thereafter, through and including the payment date one month prior to the Maturity Date, Borrower shall make monthly payments of principal and interest as follows:

(i)     During the period when the Variable Rate is in effect, Borrower shall pay monthly payments of interest in arrears together with monthly principal payments in amounts equal to the monthly principal payments which would be made on an assumed loan in the amount of the loan evidenced by this Note in order to amortize such assumed loan over 20 years at an annual interest rate of 7% per annum.

(ii)    During any period when the Fixed Rate is in effect, Borrower shall pay monthly installments of principal and interest in an amount sufficient to amortize the loan evidenced by this Note over 20 years at the effective Fixed Rate. The Bank shall have the option to adjust the monthly payment amount at the Fixed Rate Adjustment Date.

(c)   The final installment shall be equal to the entire unpaid balance of principal and all accrued interest on this Note and shall be due and payable on April 27, 2017 (the "Maturity Date").

The Bank may charge a late charge equal to five percent (5%) of each installment which is received by the Bank more than ten (10) days after due. Acceptance of the late charge shall not waive any default under this Note. All payments hereunder shall be in immediately available United States funds, without setoff or counterclaim. Any payments of principal in excess of the installment payments required shall apply to the installments last falling due. If this Note or any installment thereon shall become payable on a day other than a day on which the Bank is open for business, such payment shall be extended to the next succeeding business day and interest thereon shall be payable at the rate herein specified during the extension. If any payment applied by the Bank to this Note is subsequently set aside, recovered, rescinded or otherwise required to be returned or disgorged by the Bank for any reason (pursuant to bankruptcy proceedings, fraudulent conveyance statutes, or otherwise), this Note shall be deemed to have continued in existence, notwithstanding the application, and this Note shall be enforceable as to the amount of such payment as fully as if the Bank had not received and applied the payment.

Security. This Note and any other indebtedness and liabilities of any of the undersigned to the Bank, and all renewals or extensions thereof, whether joint or several, contingent or absolute, now existing or hereafter arising, and howsoever evidenced (herein collectively called the "Liabilities") are secured by all items now or hereafter deposited in any account of any of the undersigned and any guarantor with the Bank and by all proceeds of such items (cash or otherwise), by all account balances of any of the undersigned and any guarantor now or hereafter with the Bank, by all property of any of the undersigned and any guarantor now or hereafter in the possession of the Bank, and by any other collateral, rights and properties described in each and every mortgage, security agreement, pledge, assignment and other security or collateral agreement which has been, or will hereafter be, executed by any of the undersigned or any guarantor to or for the benefit of the Bank (all herein collectively called the "Collateral").

Representations. The undersigned represents: (a) that the execution and delivery of this Note and the performance of the obligations it imposes do not violate any law, conflict with any agreement by which it is bound, or require the consent or approval of any governmental authority or any third party; (b) that this Note is a valid and binding agreement, enforceable according to

its terms; and (c) that all balance sheets, profit and loss statements, and other financial statements furnished to the Bank are accurate and fairly reflect the financial condition of the organizations and persons to which they apply on their effective dates, including contingent liabilities of every type, which financial condition has not changed materially and adversely since those dates. The undersigned (if not a natural person), further represents: (a) that it is duly organized, existing and in good standing pursuant to the laws under which it is organized; and (b) that the execution and delivery of this Note and the performance of the obligations it imposes (i) are within its powers and have been duly authorized by all necessary action of its governing body; and (ii) do not contravene the terms of its articles of incorporation or organization, its by laws, or any partnership, operating or other agreement governing its affairs.

Default. Occurrence of any of the following events shall be an "Event of Default" under this Note: (a) non-payment when due, of this Note or any other Liabilities, or any obligations of any guarantor to the Bank; (b) failure of the undersigned or any guarantor to comply with any term of any agreement between any of them and the Bank; (c) the Bank discovers that any warranty or representation made to it by the undersigned or any guarantor was or is false; (d) the undersigned or any guarantor becomes insolvent or unable to pay debts as they mature or makes an assignment for the benefit of creditors or any proceeding is instituted by or against any of them under any bankruptcy, insolvency or similar laws or any judgment is entered or any writ of attachment, garnishment or execution or tax lien is issued or levied against any one of them, any of their property or the Collateral; (e) any indebtedness of the undersigned or any guarantor becomes due by reason of default and/or acceleration of the maturity thereof; (f) death or incompetency of the undersigned or any guarantor, if a natural person; dissolution or death of a partner of the undersigned or any guarantor, if a partnership; dissolution, merger, consolidation or a material change in the ownership of the voting stock of the undersigned or any guarantor, if a corporation; dissolution, merger, or change in the members of the undersigned or any guarantor, if a limited liability company; (g) cessation of the normal business operations of the undersigned or any guarantor; (h) actual, impending, or reasonably anticipated decline in the value of the Collateral or the Bank deems the margin of the Collateral securing the Liabilities to be insufficient; (i) sale of any assets of the undersigned, other than sales of inventory in the ordinary course of business; (j) if the control or management of the undersigned or any guarantor changes in a manner which adversely affects, in the sole judgment of the Bank, the ability of the undersigned or any guarantor to carry on its business as previously conducted; (k) failure of the undersigned or any guarantor to pay, when due, any federal, state, or local tax, assessment, withheld tax, or similar obligation; (l) any guaranty of, document granting security for, or subordination agreement regarding, any of the Liabilities shall, at any time, cease to be in full force and effect or be declared null and void, or any party to such guaranty, security document or subordination agreement (other than the Bank) gives notice of termination thereunder or denies that it has any future or further liability thereunder (by giving notice to such effect or otherwise) or contests the validity or enforceability thereof; (m) the Bank deems itself insecure, in good faith, believing that the prospect of payment of this Note or any of the Liabilities is impaired or in good faith fearing deterioration, removal or waste of any of the Collateral; or (n) the undersigned or any guarantor becomes subject at any time to any law, regulation or list of any government agency (including, without limitation, the U.S. Office of Foreign Asset Control list) that prohibits or limits the Bank from making an advance or extension of credit to the undersigned or any guarantor or from otherwise conducting business with the undersigned or any guarantor or fails to provide documentary and other evidence of the undersigned's or any

guarantor's identity as may be requested by the Bank at any time to enable the Bank to verify the undersigned's or any guarantor's identity or to comply with any applicable law or regulation, including, without limitation, Section 326 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318.

Notwithstanding the above, (i) in the event of a non-payment under item (a), above, and provided that there has been no non-payment when due during the previous 12 months, such non-payment shall not be an Event of Default if the payment is made in full within 10 days after notice of the non-payment from the Bank to the Borrower; and (ii) in the event of a failure under item (b), above, the same shall not be an Event of Default if it is cured to the Bank's satisfaction within 30 days after notice thereof from the Bank to the Borrower (or within such other time as may be provided in the applicable agreement).

Remedies on Default.  Upon occurrence of an Event of Default:  (a) this Note and all of the other Liabilities (regardless of any contrary terms of such Liabilities) shall, at the Bank's option, be immediately due and payable without demand or notice; (b) the Bank may exercise any right and remedies granted to it by this Note, any of the Liabilities or any present or future agreement with any of the undersigned or any guarantor, or otherwise available to the Bank under applicable law; (c) the Bank may exercise its right of set-off and/or take possession of and dispose of any of the Collateral.  The undersigned and all guarantors agree to reimburse the holder or owner of this Note upon demand for any and all costs and expenses (including without limit, court costs, legal expenses and reasonable attorney fees, whether inside or outside counsel is used, whether or not suit is instituted and, if suit is instituted, whether at the trial court level, appellate level, in a bankruptcy, probate or administrative proceeding or otherwise) incurred in collecting or attempting to collect this Note or incurred in any other matter or proceeding relating to this Note (including participating or taking action in any bankruptcy or other insolvency proceeding of the undersigned or any guarantor).

Waivers.   Each of the undersigned and every guarantor severally waives demand, presentment, notice of dishonor, protest, notice of demand or intent to demand, notice of acceleration or intent to accelerate, and all other notices, and consents to: (a) any extension or postponement of the time for payment of this Note; (b) any renewal of this Note or indulgences granted by the Bank with respect to enforcement of its terms; (c) any substitution, exchange or release of all or any part of the Collateral; (d) the addition, substitution or release of any maker or guarantor; and (e) the election by the Bank not to seek enforcement against any person or entity which may be liable for payment of this Note.  The undersigned and all makers, endorsers, guarantors and sureties hereof, jointly and severally, waive presentment, homestead exemptions, demands, protests, notice of protest, notice of dishonor, diligence in collection and all notices and matters of like kind and nature.

Information Sharing.  The Bank may provide, without any limitation whatsoever, any information or knowledge the Bank may have about the undersigned or any matter relating to this Note and any related documents to the Bank's parent, subsidiaries and affiliates and their successors, or to any one or more purchasers or potential purchasers of this Note or any related documents, and the undersigned waives any right to privacy the undersigned may have with respect to such matters.  The undersigned agree that the Bank may at any time sell, assign or

transfer one or more interests or participations in all or any part of its rights or obligations under this Note to one or more purchasers whether or not related to the Bank.

Miscellaneous. "Guarantor" as used herein means any person or entity endorsing or guaranteeing, or granting security for this Note in any manner. The obligations of the undersigned and all guarantors under this Note shall be joint and several; and each of the undersigned and each guarantor shall be individually liable for all amounts due under this Note. All persons signing this Note on behalf of a corporation, partnership, trust or other entity warrants to the Bank that they are duly and properly authorized to execute this Note and that the proceeds will be used by the entity for business purposes. Nothing in this Note shall waive or restrict any right of the Bank granted in any other document or by law. No delay on the part of the Bank in the exercise of any right or remedy shall operate as a waiver. No single or partial exercise by the Bank of any right or remedy shall preclude any other future exercise of that right or remedy or the exercise of any other right or remedy. The terms and conditions of this Note may not be amended, waived or modified except in a writing signed by an officer of the Bank expressly stating that the writing constitutes an amendment, waiver, or modification of the terms of this Note. A waiver on one occasion shall not be construed as a waiver of that term on any future occasion. Acceptance of partial or late payments owing on this Note at any time shall not be deemed a waiver of any default. All rights, remedies and security granted to the Bank herein are cumulative and in addition to other rights, remedies or security which may be granted elsewhere or by law. Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law. If any provision hereof shall be declared invalid or illegal it shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of the provision or the remaining provisions of this Note. Any reference to the Bank shall include any holder of this Note and any holder shall succeed to the Bank's rights. This Note shall bind the respective heirs, personal representatives, successors and assigns of the undersigned and all guarantors. The undersigned and all guarantors agree that any action against them for enforcement of this Note may be brought by the Bank in any federal, municipal or state court in Ohio, having jurisdiction of the subject matter; they consent to personal jurisdiction over them by such courts; and they consent to venue in such courts. This Note has been executed in Ohio and is governed by Ohio law. The undersigned and all guarantors agree to reimburse the Bank for all expenses incurred by the Bank in its investigation, processing, and preparation for closing of the loan evidenced by this Note including reasonable attorneys' fees and costs, title insurance fees, survey fees, appraisal fees, and other out-of-pocket expenses.

WAIVER OF SPECIAL DAMAGES. THE UNDERSIGNED WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT THE UNDERSIGNED MAY HAVE TO CLAIM OR RECOVER FROM THE BANK IN ANY LEGAL ACTION OR PROCEEDING ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES.

WAIVER OF JURY TRIAL. THE UNDERSIGNED AND THE BANK HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED ON CONTRACT, TORT, OR OTHERWISE) BETWEEN THE

UNDERSIGNED AND THE BANK ARISING OUT OF OR IN ANY WAY RELATED TO THIS NOTE, ANY OF THE LIABILITIES, OR ANY ALLEGED ACT OR NEGLECT OF THE BANK. THIS PROVISION IS A MATERIAL INDUCEMENT TO THE BANK TO PROVIDE THE FINANCING DESCRIBED HEREIN.

Confession of Judgment. The undersigned irrevocably authorizes and empowers any attorney-at-law (including, without limitation, any attorney who has represented or does represent the holder of this Note) to appear for it, in the name and on behalf of the undersigned, before any court in the State of Ohio or elsewhere in the United States or its territories, to render a cognovit judgment against the undersigned and/or any endorser, guarantor or surety, at any time after this obligation becomes due, and waive process and service thereof, and without notice, confess judgment against the undersigned in favor of the payee or holder, for the amount that may appear to be due hereon for principal, interest, damages and costs of suit, release all errors in judgments so confessed, and waive all right and benefit of appeal and stays of execution. In the event the attorney-at-law who confesses judgment hereon has represented or does represent the holder of this Note, the undersigned specifically waives any conflict of interest on the part of such confessing attorney and specifically consents to the payment by the holder of this Note of the legal fee of confessing attorney for confessing judgment hereon. The undersigned expressly acknowledges that the within warrant of attorney shall be deemed a continuing warrant of attorney and shall not be extinguished or terminated by reason of its having been utilized once or more than once against one or more of the undersigned, and that the within warrant of attorney shall survive the entry of any judgment hereon and shall remain in effect as long as any amounts due thereon remain unpaid. This provision and the rights herein granted shall not be affected by the dissolution or liquidation of any of the undersigned.

**"WARNING - BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE."**


Borrower's Address:                          Borrower:


350 E. First Avenue                          PICKERINGTON 256 ARC, LLC
Columbus, Ohio 43215

                                             By: _____
                                               Name: Jason Grinsorel
                                               Title: Manager

| Pmt | Principal | Principal Balance |
|---|---|---|
| 1 | 3647.35 | 1896352.65 |
| 2 | 3668.62 | 1892684.03 |
| 3 | 3690.02 | 1888994.01 |
| 4 | 3711.55 | 1885282.46 |
| 5 | 3733.20 | 1881549.26 |
| 6 | 3754.98 | 1877794.28 |
| 7 | 3776.88 | 1874017.40 |
| 8 | 3798.91 | 1870218.49 |
| 9 | 3821.07 | 1866397.42 |
| 10 | 3843.36 | 1862554.06 |
| 11 | 3865.78 | 1858688.28 |
| 12 | 3888.33 | 1854799.95 |
| 13 | 3911.01 | 1850888.94 |
| 14 | 3933.83 | 1846955.11 |
| 15 | 3956.78 | 1842998.33 |
| 16 | 3979.86 | 1839018.47 |
| 17 | 4003.07 | 1835015.40 |
| 18 | 4026.42 | 1830988.98 |
| 19 | 4049.91 | 1826939.07 |
| 20 | 4073.54 | 1822865.53 |
| 21 | 4097.30 | 1818768.23 |
| 22 | 4121.20 | 1814647.03 |
| 23 | 4145.24 | 1810501.79 |
| 24 | 4169.42 | 1806332.37 |
| 25 | 4193.74 | 1802138.63 |
| 26 | 4218.20 | 1797920.43 |
| 27 | 4242.81 | 1793677.62 |
| 28 | 4267.56 | 1789410.06 |
| 29 | 4292.45 | 1785117.61 |
| 30 | 4317.49 | 1780800.12 |
| 31 | 4342.68 | 1776457.44 |
| 32 | 4368.01 | 1772089.43 |
| 33 | 4393.49 | 1767695.94 |
| 34 | 4419.12 | 1763276.82 |
| 35 | 4444.90 | 1758831.92 |
| 36 | 4470.83 | 1754361.09 |
| 37 | 4496.91 | 1749864.18 |
| 38 | 4523.14 | 1745341.04 |
| 39 | 4549.52 | 1740791.52 |
| 40 | 4576.06 | 1736215.46 |

| | | |
|---|---|---|
| 41 | 4602.76 | 1731612.70 |
| 42 | 4629.61 | 1726983.09 |
| 43 | 4656.61 | 1722326.48 |
| 44 | 4683.78 | 1717642.70 |
| 45 | 4711.10 | 1712931.60 |
| 46 | 4738.58 | 1708193.02 |
| 47 | 4766.22 | 1703426.80 |
| 48 | 4794.02 | 1698632.78 |
| 49 | 4821.99 | 1693810.79 |
| 50 | 4850.12 | 1688960.67 |
| 51 | 4878.41 | 1684082.26 |
| 52 | 4906.87 | 1679175.39 |
| 53 | 4935.49 | 1674239.90 |
| 54 | 4964.28 | 1669275.62 |
| 55 | 4993.24 | 1664282.38 |
| 56 | 5022.37 | 1659260.01 |
| 57 | 5051.66 | 1654208.35 |
| 58 | 5081.13 | 1649127.22 |
| 59 | 5110.77 | 1644016.45 |
| 60 | 5140.58 | 1638875.87 |
| 61 | 5170.57 | 1633705.30 |
| 62 | 5200.73 | 1628504.57 |
| 63 | 5231.07 | 1623273.50 |
| 64 | 5261.58 | 1618011.92 |
| 65 | 5292.28 | 1612719.64 |
| 66 | 5323.15 | 1607396.49 |
| 67 | 5354.20 | 1602042.29 |
| 68 | 5385.43 | 1596656.86 |
| 69 | 5416.85 | 1591240.01 |
| 70 | 5448.45 | 1585791.56 |
| 71 | 5480.23 | 1580311.33 |
| 72 | 5512.20 | 1574799.13 |
| 73 | 5544.35 | 1569254.78 |
| 74 | 5576.69 | 1563678.09 |
| 75 | 5609.22 | 1558068.87 |
| 76 | 5641.94 | 1552426.93 |
| 77 | 5674.86 | 1546752.07 |
| 78 | 5707.96 | 1541044.11 |
| 79 | 5741.26 | 1535302.85 |
| 80 | 5774.75 | 1529528.10 |
| 81 | 5808.43 | 1523719.67 |
| 82 | 5842.32 | 1517877.35 |

| | | |
|---|---|---|
| 83 | 5876.40 | 1512000.95 |
| 84 | 5910.67 | 1506090.28 |
| 85 | 5945.15 | 1500145.13 |
| 86 | 5979.83 | 1494165.30 |
| 87 | 6014.72 | 1488150.58 |
| 88 | 6049.80 | 1482100.78 |
| 89 | 6085.09 | 1476015.69 |
| 90 | 6120.59 | 1469895.10 |
| 91 | 6156.29 | 1463738.81 |
| 92 | 6192.20 | 1457546.61 |
| 93 | 6228.32 | 1451318.29 |
| 94 | 6264.66 | 1445053.63 |
| 95 | 6301.20 | 1438752.43 |
| 96 | 6337.96 | 1432414.47 |
| 97 | 6374.93 | 1426039.54 |
| 98 | 6412.12 | 1419627.42 |
| 99 | 6449.52 | 1413177.90 |
| 100 | 6487.14 | 1406690.76 |
| 101 | 6524.98 | 1400165.78 |
| 102 | 6563.05 | 1393602.73 |
| 103 | 6601.33 | 1387001.40 |
| 104 | 6639.84 | 1380361.56 |
| 105 | 6678.57 | 1373682.99 |
| 106 | 6717.53 | 1366965.46 |
| 107 | 6756.71 | 1360208.75 |
| 108 | 6796.13 | 1353412.62 |
| 109 | 6835.77 | 1346576.85 |
| 110 | 6875.65 | 1339701.20 |
| 111 | 6915.76 | 1332785.44 |
| 112 | 6956.10 | 1325829.34 |
| 113 | 6996.68 | 1318832.66 |
| 114 | 7037.49 | 1311795.17 |
| 115 | 7078.54 | 1304716.63 |
| 116 | 7119.83 | 1297596.80 |
| 117 | 7161.37 | 1290435.43 |
| 118 | 7203.14 | 1283232.29 |
| 119 | 7245.16 | 1275987.13 |
| 120 | 7287.42 | 1268699.71 |

**LOAN COVENANT ADDENDUM**
**TO $1,900,000 NOTE**
**DATED APRIL_21, 2007, FROM**
**PICKERINGTON 256 ARC, LLC**
**TO REPUBLIC BANK (the "Bank")**

The provisions of this Addendum are hereby made a part of the Note described above. If the date of signing of this Addendum is later than the date of signing of any other Addendum to such Note, this Addendum shall supersede and replace such prior Addendum.

1.      So long as Bank shall have any commitment or obligation, if any, to make any loans or extend credit to or in favor of the undersigned, and so long as any indebtedness or obligations of the undersigned to the Bank remain unpaid and outstanding, the undersigned covenants and agrees that it shall:

(a)      Within ninety (90) days after the end of each fiscal year, furnish to Bank a balance sheet and income statement, reconciliation of capital account and source and application of funds as at the end of and for the fiscal year just closed setting forth the corresponding figures of the previous fiscal year in comparative form, all in reasonable detail and certified by management to be true, accurate and complete.

(b)      Within one hundred twenty (120) days after each calendar year end, furnish to Bank a copy of the undersigned's signed federal income tax return for such calendar year.

(c)      Provide to Bank any additional financial or other information regarding the undersigned as Bank may request from time to time.

(d)      Within thirty (30) days after each calendar year end, furnish to the Bank a rent roll in form satisfactory to Bank and certified by the undersigned as being true and complete.

(e)      Maintain the ratio of "Cash Flow" to "Debt Service" for each of its fiscal years ending after the date of this Addendum of not less than 1.25 to 1.00. Such ratio shall be measured annually commencing with the fiscal year ending December 31, 2007. The term "Cash Flow" shall mean, for any period of determination thereof, net income (or loss) plus any amounts deducted in the calculation thereof, with respect to interest expense, depreciation or amortization, all determined in accordance with generally accepted accounting principles, consistently applied. For purposes of this calculation, the jobber income of Anchor Management Group, Inc. under the Dealer Sales Agreement, or Sub-Jobber Contract, for the Project to which the Note relates will be included. The term "Debt Service" shall mean, for any period of determination thereof, all payments due regarding the undersigned's: (i) indebtedness for borrowed money, including that which is evidenced by notes, bonds, debentures or similar instruments; and (ii) obligations under installment sales contracts or capital leases.

(f)      Comply with all applicable federal, state and local laws, ordinances, rules and regulations, including, but not limited to, all environmental laws, ordinances, rules and regulations, all applicable federal, state and local laws, ordinances, rules and regulations

concerning wage payments, minimum wages, overtime laws and payment of withholding taxes, and deliver to the Bank such reports and information in form satisfactory to the Bank as the Bank may request from time to time to establish compliance with such laws.

      (g)    Preserve and keep in full force and effect its existence in good standing, and continue to conduct and operate its business substantially as presently conducted and operated and maintain and protect all franchises and trade names and preserve all the remainder of its property and assets used or useful in the conduct of its business and keep the same in good repair and condition.

      (h)    Promptly inform the Bank of the occurrence of any Event of Default, or any condition or event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default, or of any condition or event which could have a materially adverse effect upon the undersigned's business, properties, condition (financial or otherwise) or its ability to comply with its obligations under this Note.

      (i)    Permit the Bank, or any of its designated agents, employees or representatives, to inspect all of the books, records and properties of the undersigned at any reasonable time.

      (j)    Maintain insurance with responsible companies in such amounts and against such risks and hazards as are normally insured against by similar businesses, and provide the Bank evidence of such insurance upon request.

      (k)    Promptly pay all taxes and similar charges of every kind and nature lawfully assessed upon or against the undersigned and/or any of its property or assets, except to the extent being diligently contested in good faith by appropriate proceedings.

      (l)    Maintain a deposit account with Bank at all times with average daily deposits (measured monthly) in an amount reasonably acceptable to the Bank.

      (m)    Not make any distributions to its members or repurchase any of its membership interests, provided that the Borrower shall be permitted to make distributions to its members for tax liability or otherwise in the normal course of business so long as after any of such distributions (i) the Cash Flow to Debt Service ratio required by paragraph 1(e), above, shall continue to be maintained, and (ii) the Borrower shall maintain a reasonable liquidity level in amount not less than $15,000.

      (n)    Not affirmatively pledge or mortgage any of its property or assets, whether now owned or hereafter acquired, or create, suffer or permit to exist, any lien or security interest or encumbrance thereon, except liens, mortgages, security interests and other encumbrances to or in favor of the Bank.

    2.    Notwithstanding any provisions of the Note or any other Loan Documents to the contrary, upon the closing of the Loan evidenced by the Note on or about this date, the Bank is holding back, and not disbursing to Borrower, the sum of $150,000 (the "Holdback Amount"), and the Bank shall continue to hold the Holdback Amount of the Loan until released or applied pursuant to this paragraph. At such time during the term of the Note that the net income from

Property (as defined in the Mortgage) to which the Note relates can support a 75% loan-to-value ratio, as determined by the Bank in its discretion, Bank shall release and disburse the Holdback Amount to or for the benefit of Borrower (provided that there is no outstanding Event of Default under the Note at such time, and in the case of such an Event of Default, the Bank may at its option use such amount to remedy the default or to otherwise apply such amount in accordance with any of its available remedies).

3.    Waiver of Jury Trial.  THE UNDERSIGNED AND THE BANK HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED ON CONTRACT, TORT, OR OTHERWISE) BETWEEN THE UNDERSIGNED AND THE BANK ARISING OUT OF OR IN ANY WAY RELATED TO THIS NOTE, ANY OF THE LIABILITIES, OR ANY ALLEGED ACT OR NEGLECT OF THE BANK.  THIS PROVISION IS A MATERIAL INDUCEMENT TO THE BANK TO PROVIDE THE FINANCING DESCRIBED HEREIN.

4.    Confession of Judgment.  The undersigned irrevocably authorizes and empowers any attorney-at-law (including, without limitation, any attorney who has represented or does represent the holder of this Note) to appear for it, in the name and on behalf of the undersigned, before any court in the State of Ohio or elsewhere in the United States or its territories, to render a cognovit judgment against the undersigned and/or any endorser, guarantor or surety, at any time after this obligation becomes due, and waive process and service thereof, and without notice, confess judgment against the undersigned in favor of the payee or holder, for the amount that may appear to be due hereon for principal, interest, damages and costs of suit, release all errors in judgments so confessed, and waive all right and benefit of appeal and stays of execution.  In the event the attorney-at-law who confesses judgment hereon has represented or does represent the holder of this Note, the undersigned specifically waives any conflict of interest on the part of such confessing attorney and specifically consents to the payment by the holder of this Note of the legal fee of confessing attorney for confessing judgment hereon.  The undersigned expressly acknowledges that the within warrant of attorney shall be deemed a continuing warrant of attorney and shall not be extinguished or terminated by reason of its having been utilized once or more than once against one or more of the undersigned, and that the within warrant of attorney shall survive the entry of any judgment hereon and shall remain in effect as long as any amounts due thereon remain unpaid.  This provision and the rights herein granted shall not be affected by the dissolution or liquidation of any of the undersigned.

"WARNING - BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL.  IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE."

Date of Signing:  April 27, 2007            PICKERINGTON 256 ARC, LLC

                                            By: _____
                                            Name: ___ Jason Gunsorek _____
                                            Title: _____ Manager _____