OR I 4 6 3 PAGE 0 6 5 3

200700009189
Filed for Record in
FAIRFIELD COUNTY, OH
GENE WOOD
05-02-2007 At 02:23 pm.
MORTGAGE     196.00
OR Book 1463 Page 653 - 675

## OPEN-END MORTGAGE AND SECURITY AGREEMENT

(Maximum unpaid loan indebtedness, exclusive of interest  20-16-29 *Pickerington*
thereon, which may be outstanding at any time is $1,900,000)

THIS IS AN OPEN-END MORTGAGE AND SECURITY AGREEMENT made April
2, 2007, between **PICKERINGTON 256 ARC, LLC**, an Ohio limited liability company,
whose address is 350 E. First Avenue, Columbus, Ohio 43215, hereinafter referred to as the
"Mortgagor" or "Borrower", and **REPUBLIC BANK**, having its principal office at 29225
Chagrin Boulevard, Pepper Pike, Ohio 44122, hereinafter referred to as the "Bank".

The Mortgagor represents, warrants, covenants and agrees to and with the Bank that at all
times this Mortgage is in effect:

 1. Liabilities. This Mortgage secures the following obligations to the Bank
(hereinafter collectively referred to as the "Liabilities"):

 (a) This Mortgage is given pursuant to a certain Loan Agreement or Loan
Covenant Addendum of even date herewith between Bank and Mortgagor ("Loan Agreement")
to secure indebtedness made pursuant to the Loan Agreement including, without limitation,
principal, interest and late charges described and evidenced by a certain Commercial Term Note
of even date herewith in the principal sum of One Million Nine Hundred Thousand Dollars
($1,900,000) (the "Note"), together with all modifications and amendments thereto, and notes
given in substitution thereof, together with interest as specified in the Note, the entire principal
balance of the Note, together with all accrued but unpaid interest thereon, being due and payable
on the Maturity Date set forth in the Note. It is expressly agreed in the Note that the principal
sum then unpaid may be declared and become due and payable upon the occurrence of an Event
of Default under the provisions of this Mortgage, the Note, the Loan Agreement, or any of the
other documents entered into in connection with the loan evidenced by the Note (the "Loan
Documents").

 In addition to the debt and other obligations secured by this Mortgage, this
Mortgage also secures unpaid balances of advances made by the Bank with respect to the
Property for the payment of taxes, assessments, insurance premiums or costs incurred for the
protection of the Property as provided for in Section 5301.233 of the Ohio Revised Code;
payment by Mortgagor to Bank of all sums expended or advanced by Bank pursuant to any term
or provision of this Mortgage or the other Loan Documents, as defined in the Loan Agreement;
performance and observance of each covenant and agreement of Mortgagor contained in the
Loan Documents; and payment by Mortgagor to Bank of all other liabilities and indebtedness,
direct or contingent, now or hereafter owing by Mortgagor to Bank.

 This Mortgage also secures the unpaid balance of loan advances to be
made after this Mortgage is delivered to the County Recorder for record. The maximum amount
of unpaid balance of all loan advances, in the aggregate and exclusive of interest thereon and
other advances made pursuant thereto, which may be outstanding at any time is One Million
Nine Hundred Thousand Dollars ($1,900,000). In addition to any other debt or obligation
secured hereby, this Mortgage shall also secure unpaid balances of advances made with respect
to the Property for the payment of taxes, assessments, insurance premiums or costs incurred for

#170745v2 – Open-End Mortgage

BK 1463 PAGE 0654

maintaining improvements on or for the protection of the Property. If and to the extent applicable, Mortgagor hereby waives any right it may have under Section 5301.232(c) of the Ohio Revised Code.

(b) ALL OTHER EXISTING AND FUTURE OBLIGATIONS OF MORTGAGOR TO THE BANK, WHETHER OR NOT SUCH OBLIGATIONS ARE INCLUDED ABOVE, including, but not limited to, payment and performance of the provisions of this Mortgage; payment of all advances (including future advances), made or to be made by the Bank; payment and performance of all notes, undertakings, obligations, debts, liabilities, agreements, applications or agreements for issuance of letters of credit, assignments, guarantees, or promises of or by the Mortgagor to or with the Bank, whether due, existing or arising, now or in the future, absolute or contingent, direct or indirect, however arising or acquired by the Bank, and including obligations originally owing by the Mortgagor to a third party and assigned by such third party to the Bank; payment and performance of all existing and future obligations (including the kinds of obligations described above) to the Bank of any persons or entities for which the Mortgagor is or becomes an accommodation party, surety or guarantor or whose obligations this Mortgage is given to secure; and all extensions, renewals and modifications of the foregoing. If more than one person appears as the Mortgagor above, the Liabilities shall include, without limitation, all of the foregoing joint, several and individual obligations of each such person to the Bank. Mortgagor agrees that if the proceeds of any of the Liabilities created in the future are utilized to pay and/or renew any of the Liabilities existing at this time, such future Liabilities shall be presumed to be renewals or extensions of such existing Liabilities.

2. Grant of Mortgage and Lien. In consideration of and to secure the Liabilities, the Mortgagor hereby mortgages and warrants to the Bank, its successors and assigns, the land, premises and property situated in the City of Pickerington and Violet Township, Fairfield County, Ohio (the "Premises"), described as:

See Exhibit A, which is hereby incorporated herein by reference.

Tax Parcel No. _____.

The Mortgagor also mortgages and warrants to the Bank: (a) all privileges, appurtenances, improvements, buildings, tenements, hereditaments, easements, rights of way, licenses, permits, riparian and littoral rights, mineral/oil/gas/water rights, rights to adjoining land, and all other rights belonging to the Premises and which may hereafter attach thereto; (b) all rents, issues, profits, revenues, proceeds, accounts and general intangibles arising from or relating to the Premises or any business conducted thereon by the Mortgagor (collectively the "Rents and Accounts"); (c) all equipment, other goods, and fixtures of every kind and nature whatsoever, now or hereafter located in or upon the Premises or any part thereof and used or useable in connection with any present or future operation of such premises (hereinafter called "Equipment and Fixtures"), whether now owned or hereafter acquired by the Mortgagor, including, without limitation, all heating, air conditioning, ventilation, lighting, incinerating and power equipment, engines, signs, security systems, fences, hoists, cranes, compressors, pipes, pumps, tanks, motors, plumbing, cleaning, fire prevention, fire extinguishing, apparatus, elevators, escalators, shades, awnings, screens, storm doors and windows, appliances, attached cabinets, partitions, carpeting, ground maintenance equipment, and similar types of equipment,

2
#170745v2 – Open-End Mortgage

BK 1 4 6 3 PAGE 0 6 5 5

all of which shall be deemed to be real estate and mortgaged hereby; (d) all "as-extracted collateral" related to the Premises; and (e) all awards or payments, and interest on them, made with respect to the Premises as a result of (i) any eminent domain proceeding, (ii) any street grade alteration, (iii) any loss of or damage to any building or other improvement, (iv) any other injury to or decrease in the value of the Premises, (v) any refund due on account of the payment of real estate taxes, assessments or other charges levied against the Premises or (vi) any refund of utility deposits or right to any tenant deposit. This Mortgage shall also constitute a security agreement with reference to the Equipment and Fixtures, as-extracted collateral and Rents and Accounts and all proceeds thereof; a fixture filing; and a Financing Statement covering as-extracted collateral.

All of the above described Premises, Equipment and Fixtures, Rents and Accounts, and other property and rights related thereto are collectively referred to herein as the "Property".

3. **Payment and Performance of Obligations.** The Mortgagor shall pay the Liabilities in accordance with the terms thereof and shall keep and perform all the terms, conditions and covenants of the Liabilities.

4. **Title to Property/Priority of Lien.** The Mortgagor does and shall own good and marketable title to the Property, free of all easements, liens, mortgages, security interests, encroachments, encumbrances, leasehold interests, rights, claims, and other interests of any nature (herein "Interests"), other than Interests which are consented to in writing by the Bank and set forth on **Exhibit B** attached to and made a part hereof ("Permitted Encumbrances"). The Mortgagor shall forever warrant and defend the Property against any and all Interests not consented to in writing by the Bank and the lien created hereby is and shall be kept as a first lien upon the Property (subject to the Permitted Encumbrances), unless otherwise agreed in writing by the Bank. The Mortgagor shall pay when due all obligations which, if unpaid, would become a lien on the Property. Upon request, the Mortgagor shall, at its cost, provide the Bank with a title insurance policy and other evidence of title as the Bank may request from time to time which shall be in form and substance satisfactory to the Bank.

5. **Condition, Maintenance and Use of the Property.** The Property is and shall be in good condition sufficient for the use contemplated by the Mortgagor, and free of all material defects. None of the easements, rights, or other Interests consented to by the Bank shall materially impair or restrict the use of the Property as contemplated by the Mortgagor. The Mortgagor shall not commit, now or hereafter, waste on the Property and shall maintain all of the Property in good condition and working order satisfactory to the Bank, and shall make all repairs and replace all Equipment and Fixtures necessary to maintain the utility and value of the Property and keep it in compliance with all applicable laws, regulations, and ordinances. The Mortgagor shall do everything necessary to keep in force any manufacturer's and seller's warranties with respect to the Equipment and Fixtures. The Mortgagor shall hold all valid permits and licenses necessary to operate and maintain the Property as contemplated by the Mortgagor and the Property shall be used only for lawful purposes and in compliance with all applicable laws, regulations and ordinances. The Mortgagor shall promptly repair, restore, replace or rebuild each part of the Property which may be damaged or destroyed by fire or other casualty or which may be affected by any eminent domain proceedings, notwithstanding

3
#170745v2 – Open-End Mortgage

OR 1463 PAGE 0656

application by the Bank of the insurance proceeds or eminent domain award to payment of the Liabilities. Mortgagor shall neither alter, destroy or remove any of the building's improvements or other property covered by this Mortgage or permit the Property to be altered, destroyed or removed or used for any other purposes other than as set forth in the Loan Agreement without first obtaining Bank's written permission. Mortgagor shall timely and promptly pay (unless in good faith reasonably contested) all claims by persons or entities who have a right to collect commission in connection with the financing, leasing or selling of the Property and shall obtain a release of any broker's liens. Mortgagor shall also timely and promptly pay when due all claims for labor performed and material furnished and will remove or bond off any lien of mechanics or materialmen or any judgment lien which attaches to the Property within thirty (30) days after the filing of such lien. Without limiting the generality of the foregoing, Mortgagor agrees to maintain the Property in a condition at least as good as existing on the date of this instrument (as evidenced by the appraisal furnished to Bank in connection herewith), ordinary wear and tear excepted, and to timely complete any improvements to the Property require to be made under the tenant leases,

6.   Payment of Taxes. The Mortgagor shall pay and discharge all taxes, assessments, both general and special fees, licenses, liens, water and sewer, rents, and charges at any time levied upon or assessed against the Mortgagor or the Property. The Mortgagor shall not do anything or permit anything to be done which would impair the lien of this Mortgage. Notwithstanding the foregoing, the Mortgagor shall not be required to pay any tax, assessment, fee, license, lien, or charge so long as it is in good faith contesting the validity thereof. If such contest is made, the Mortgagor shall provide security for the payment of such tax, assessment, fee, license, lien, or charge in a manner satisfactory to the Bank.

7.   Insurance. The Mortgagor shall carry insurance against such risks, with such companies, and in such amounts as shall be satisfactory to the Bank (including but not limited to, hazard insurance, general liability and flood insurance, if the Property is located within a flood hazard area and such other coverages as set forth in the Loan Agreement); together with workers compensation coverage issued by the State of Ohio for any employees, each policy shall be in a form satisfactory to the Bank with standard mortgage clauses making all loss payable to the Bank. The Mortgagor shall promptly pay all premiums therefor, and deliver to the Bank all such policies of insurance. All insurance policies shall provide that notice of non-renewal or cancellation must be given to the Bank at least thirty (30) days before such non-renewal or cancellation. Any insurance money received by the Bank may, at its sole election, be paid, either in whole or in part, to the Mortgagor for the purpose of defraying the costs and expenses of repair, restoration or replacement of the Property damaged or destroyed, or be retained and applied toward the payment of any of the Liabilities, in whatever order the Bank shall elect, with the excess, if any, over the Liabilities to be repaid to the Mortgagor, without impairing the Mortgagor's duties under this Mortgage or the Liabilities. In the event of loss with respect to the Property, the Mortgagor shall promptly notify the Bank thereof and the Bank may make any proof of loss not promptly made by the Mortgagor. In the event of foreclosure or other disposition of the Property in partial or full payment of the Liabilities, the Bank shall be entitled to all of the Mortgagor's right, title and interest in and to all policies of insurance with respect to the Property, including, without limitation, the right to collect any unearned premium refund relating to such policies.

4
#170745v2 – Open-End Mortgage

OR 1463 PAGE0657

Notwithstanding any provision to the contrary contained herein, all insurance proceeds shall be held by the Bank to reimburse Mortgagor for the cost of restoration and repair of the Property (and shall not be applied toward the payment of the Liabilities until after restoration and repair of the Property) provided each of the following shall obtain:

(a)     There shall at the time of the casualty and at all time thereafter have occurred no Event of Default as defined herein below;

(b)     Mortgagor shall notify the Bank in writing of Mortgagor's intention to perform such restoration or repair within sixty (60) days after the loss or casualty;

(c)     The Bank shall receive evidence satisfactory to the Bank that the Property has been fully restored or that by application of such proceeds it will be fully restored to its condition prior to the damage or destruction, free and clear of all liens, except as otherwise expressly permitted herein;

(d)     The insurance proceeds shall, in the Bank's reasonable discretion, be sufficient to restore the Property to the equivalent of its original condition; provided that if such proceeds shall be insufficient to restore the Property to the equivalent of its original condition in the sole judgment of the Bank, Mortgagor may deposit with the Bank funds which, together with such proceeds, shall be sufficient to restore the Property to the equivalent of its original condition;

(e)     There shall in the reasonable judgment of the Bank remain sufficient time to complete the restoration or repair of the Property prior to the maturity of the Notes;

(f)     The excess of any insurance proceeds over the amount necessary to complete the restoration or repair of the Property shall be applied as a credit against any portion of the Liabilities selected by the Bank, in Bank's sole discretion; and

(g)     Each and every one of the other requirements and conditions contained in this paragraph shall be applicable.

If the insurance proceeds are held by the Bank to reimburse Mortgagor for the cost of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition or such other conditions as the Bank may approve in writing. The Bank may, at the Bank's option, condition disbursement of said proceeds on the Bank's approval of such plans and specifications of an architect satisfactory to the Bank, cost estimates of contractors satisfactory to the Bank, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen and such other evidence of costs, percentage completion of construction, application of payments, and satisfaction of liens as the Bank may reasonably require and as are consistent with the Loan Agreement.

8.     Escrow of Tax and Insurance.  Upon the occurrence of an Event of Default under any of the Loan Documents, as defined in the Loan Agreement, the Mortgagor shall pay monthly to the Bank a sum (determined by the Bank from time to time) to be held by the Bank for application to payment of the annual taxes and assessments on the Property next coming due, and the annual premiums on required insurance policies on the Property next coming due, all as

5

#170745v2 – Open-End Mortgage

OR I 463 PAGE 0658

estimated by the Bank so as to enable the Bank to pay such taxes, assessments and insurance premiums in full thirty (30) days before the due date thereof. Upon occurrence of an Event of Default, moneys so held by the Bank may be applied against the Liabilities. If the funds so paid to the Bank are insufficient to pay such taxes, assessments and insurance premiums in full thirty (30) days before the due dates thereof, the Mortgagor shall immediately upon written demand therefor, pay to the Bank such additional sums as are required to pay such taxes, assessments and insurance premiums in full thirty (30) days before the due date thereof. If the funds so paid to the Bank shall exceed the amount of taxes, assessments and insurance premiums paid by the Bank, such excess shall be credited by the Bank to subsequent payments required to be made by the Mortgagor pursuant to this paragraph.

9.     Assignment of Awards and Tax Refunds. The Mortgagor hereby assigns to the Bank, in their entirety, all judgments, decrees and awards for injury or damage to the Property, all awards pursuant to proceedings for condemnation thereof, and all refunds of local, state or federal income or other taxes relating to the Property or the disposition thereof by the Mortgagor (the "Claims"). The Mortgagor authorizes the Bank, at its sole election (and as to refunds of taxes, after default), to apply the Claims, or the proceeds thereof, to the Liabilities in such manner as the Bank may elect; and the Mortgagor hereby authorizes the Bank, at its option (and as to refunds of taxes, after default), in the name of the Mortgagor, to appear and participate in any proceeding related to the Claims and to execute and deliver valid receipts, discharges, and settlements for, and to appeal from, any award, judgment or decree with respect to the Claims.

Notwithstanding any provision to the contrary contained herein, any Claims received because of a taking of land, exclusive of any buildings, shall be held by the Bank to reimburse Mortgagor for the cost of recurbing, repaving, restriping or otherwise reorientating such land (and shall not be applied toward the payment of the Liabilities) provided, each of the following shall obtain: (a) the proceeds shall, in the Bank's reasonable judgment, be sufficient to restore the land to the equivalent of its original condition; (b) there shall at the time of taking and at all times thereafter have occurred no Event of Default, as hereinafter defined; (c) restoration of the land, in the Bank's sole judgment, shall be completed prior to the maturity dates of the Notes; and (d) Mortgagor shall comply with each and every one of the other applicable requirements and conditions contained in this paragraph.

10.     Bank's Right to Perform. If the Mortgagor defaults in the payment of any taxes, assessments or charges (or in providing security as provided in Section 6), in procuring or maintaining insurance in maintaining the Property, or in performing any of the other obligations of this Mortgage, then the Bank may, at its option, (notwithstanding anything to the contrary contained in any of the Liabilities) take any action or pay any amount required to be taken or paid by the Mortgagor hereunder. The cost of such action or payment by the Bank shall be immediately paid by the Mortgagor, shall be added to the Liabilities, shall be secured hereby, and shall bear interest at the highest rate specified in the Liabilities from the date incurred by the Bank until fully paid. No such action taken or amount paid by the Bank shall constitute a waiver of any default of the Mortgagor hereunder.

11.     Removal of the Property. Except for maintenance in the ordinary course of business, the Mortgagor shall not, without the prior written consent of the Bank, materially alter,

OR 1463 PAGE0659

remove or demolish any timber, topsoil, minerals, fixture, building, or improvement forming part of the Property.

12.    Transfer of the Property.  The Bank is relying upon the integrity of the Mortgagor and its promises to perform the covenants of this Mortgage.  The Mortgagor shall not sell, transfer, convey, assign, rent for a period exceeding one year, dispose of, or further encumber, voluntarily or involuntarily, its interest in any of the Property by deed, land contract, mortgage or otherwise, without the prior written consent of the Bank, except as specifically provided in the Loan Agreement.  Mortgagor shall comply with and observe Mortgagor's obligations under all leases, subleases and permitted licenses of the Property or any part thereof.  Subject to the foregoing, if the ownership of the Property, or any part thereof, becomes vested in a person other than the Mortgagor, the Bank may deal with such successor or successors in interest in the same manner as with the Mortgagor, without in any manner violating or discharging the Mortgagor's liability hereunder or upon the Liabilities.  The Mortgagor shall at all times continue to be primarily liable on the Liabilities until fully discharged or until the Mortgagor is formally released in writing by the Bank.

Notwithstanding the foregoing, the Bank acknowledges and agrees that (a) rental space in the improvements on the Property is currently leased by Mortgagor to tenants pursuant to written leases which have heretofore been disclosed to and delivered to the Bank (the "Existing Leases"), as more specifically identified in the Assignment of Leases and Rents of even date from Mortgagor to the Bank, and (b) Mortgagor shall have the right to enter into leases (or renewals) with new or existing tenants from time to time provided that such new leases (or renewals) are at a rental rate not less than $15 per square foot (on a triple net basis) and otherwise are on commercially reasonable terms consistent with the Existing Leases (the "New Leases"), copies of which New Leases shall be promptly provided to the Bank.

13.    Additional Documents.  At any time, upon request of the Bank, the Mortgagor shall execute and deliver or cause to be executed and delivered to the Bank and, where appropriate, shall cause to be recorded and/or filed at such time and in such offices and places designated by the Bank, any and all such other and further mortgages, financing statements, instruments of further assurance, certificates and other documents as may, in the reasonable opinion of the Bank or its counsel, be necessary or desirable to effectuate, complete, perfect, continue or preserve the obligation of the Mortgagor under this Mortgage and the lien of this Mortgage as a first lien upon all the Property (excepting prior liens consented to in writing by the Bank).  If the Mortgagor fails to comply with the foregoing sentence, the Bank may execute, record, file, re-record and refile any and all such mortgages, financing statements, instruments, certificates and documents for and in the name of the Mortgagor and the Mortgagor hereby irrevocably appoints the Bank as its agent and attorney in fact to do so.  The Mortgagor agrees to execute, acknowledge and deliver, from time to time, such financing statements or other instruments as may be requested by the Bank to confirm, protect and perfect the lien of this Mortgage on any Fixtures under the provisions of the Uniform Commercial Code or other applicable statutes in effect in Ohio or otherwise, and this Mortgage shall also constitute a security agreement with reference to the Fixtures, and upon the Mortgagor's default the Bank shall, in addition to all other remedies herein provided, have the remedies provided for under the Uniform Commercial Code in effect in Ohio.

7

#170745v2 – Open-End Mortgage

OR 1463 PAGE 0660

14.   Assignment of Leases, Rents and Other Property.  As additional security for the payment and performance of the Indebtedness, Mortgagor grants a security interest to the Bank in all deposit or other accounts with the Bank and Mortgagor assigns to the Bank all its right, title and interest in all written and oral leases and occupancy agreements, now or later existing, covering the Premises (but without an assumption by the Bank of liabilities of Mortgagor under any of these leases or occupancy agreements by virtue of this assignment), and Mortgagor assigns to the Bank the rents, issues and profits of the Premises. If an Event of Default occurs under this Mortgage, the Bank may receive and collect the rents, issues and profits personally or through a receiver so long as the Event of Default exists and during the pendency of any foreclosure proceedings and during any redemption period. Mortgagor agrees to consent to the appointment of a receiver if this is believed necessary or desirable by the Bank to enforce its rights under this Mortgage. The Bank shall at no time have any obligation to attempt to collect rent or other amounts from any tenant or occupier of the Premises.  The Bank shall at no time have any obligation to enforce any other obligations owed by tenants or occupiers of the Premises to Mortgagor. No action taken by the Bank under this Mortgage shall make the Bank a "mortgagee in possession." Mortgagor shall at no time collect advance rent under any lease or occupancy agreement pertaining to the Premises in excess of one month (other than as a security deposit) and the Bank shall not be bound in any respect by any rent prepayment in violation of this prohibition. The assignment of licenses and permits under this Mortgage shall not be construed as a consent by the Bank to any license or permit so assigned, or to impose upon the Bank any obligations with respect to them.  Mortgagor shall not cancel or amend any of the licenses and permits assigned (nor permit any of them to terminate if they are necessary or desirable for the operation of the Premises) without first obtaining the written approval of the Bank. This paragraph shall not be applicable to any license or permit that terminates if it is assigned without the consent of another party (other than Mortgagor), unless this consent has been obtained nor shall this paragraph be construed as a present assignment of any license or permit that Mortgagor is required by law to hold. Mortgagor shall comply with and perform as required all obligations and restrictions imposed upon Mortgagor or the Premises under applicable deed restrictions, restrictive covenants, easements, leases, land contracts, condominium or planned unit development documents, or other agreements affecting the Premises, but this is not a consent by the Bank to take subject to any of these agreements unless specifically set forth on attached Exhibit B, if any, and the Bank does not assume any obligations under these agreements.  Mortgagor shall promptly provide the Bank with certificates of occupancy, licenses, rent rolls, income and expense statements and other documents and information pertaining to the Premises and its operations as the Bank, from time to time, may request.

15.   Waste and Receiver.  The failure, refusal or neglect of the Mortgagor to pay any of the taxes assessed against the Property before any interest or penalty attaches thereto and to provide adequate security therefor shall constitute waste hereunder.  The failure, refusal or neglect of the Mortgagor to keep the Property adequately insured as herein provided, or to pay the premiums therefor, shall likewise constitute waste hereunder.  Upon the happening of any act or event of waste, or if there should be an Event of Default under this Mortgage, whether or not enumerated herein, and on proper application made therefor by the Bank to a court of competent jurisdiction, the Bank shall forthwith be entitled to the appointment of a receiver of the Property and of the earnings, income, issue and profits thereof, with such powers as the court making such

8
#170745v2 – Open-End Mortgage

OR 1463 PAGE 0661

appointment shall confer. The Mortgagor hereby irrevocably consents to such appointment and waives notice of any application therefor.

16.   Reimbursement of Expenses. The Mortgagor shall pay or reimburse the Bank for, and indemnify and save harmless the Bank against, all expenses reasonably necessary or incidental to the protection of the lien and priority of this Mortgage and for expenses incurred by the Bank in seeking to enforce the provisions hereof and of the Liabilities (whether before or after default, through formal or informal collection actions, workout or otherwise), including but not limited to costs of evidence of title to and survey of the Property, costs of recording this and other instruments, actual, reasonable attorney fees (including, but not limited to, fees incurred in participating or taking action in any bankruptcy or other insolvency proceeding of Mortgagor), trustees' fees, court costs, and expenses of advertising, selling and conveying the Property. All such payments or reimbursements shall be paid immediately to the Bank, shall be added to the Liabilities, shall be secured by this Mortgage, and shall bear interest at the highest rate specified in the Liabilities from the date incurred by the Bank until fully paid.

17.   Inspection and Reports. At all reasonable times, the Bank and its agents may inspect the Property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed. Upon demand by the Bank, the Mortgagor shall promptly deliver to the Bank all financial reports, statements, rent rolls and other documents relating to the Property and the Mortgagor, as shall be reasonably requested by the Bank. Mortgagor hereby authorizes the Bank to undertake or to have third parties undertake on its behalf (not more often than once in any 12 month period) environmental investigations regarding the Property and its operation including research into the previous and current ownership, use, and condition (by taking samples or borings or otherwise) of the Property for the purpose of attempting to determine whether: (i) Mortgagor or any current or past occupant of the Property has violated any federal, state or local laws involving the protection of the environment and/or the disposition of, or exposure to, hazardous or toxic substances, as now existing or as hereinafter amended or enacted, or any rules, regulations, guidelines or standards promulgated pursuant thereto; and (ii) whether any hazardous or toxic substances have been used or disposed of on the Property. Such investigations may be performed at any time before or after occurrence of an Event of Default and Mortgagor will permit the Bank and persons acting on its behalf to have access to the Property and records concerning the Property for the purpose of conducting such investigations. The cost of all such investigations shall be immediately paid by Mortgagor to the Bank, and if not paid, shall be added to the Liabilities secured hereby and shall bear interest at the highest rate specified in any of the Liabilities secured hereby from the date incurred by the Bank until paid.

18.   Security Agreement.

(a)   Mortgagor and Bank agree: (i) that this Mortgage shall constitute a Security Agreement within the meaning of the Ohio Uniform Commercial Code (the "Code") with respect to any property included in the definition herein of the word "Property," which Property may not be deemed to form a part of the Property or may not constitute a "fixture" (within the meaning of the Code), and all property listed on any financing statement filed with regard to the security agreement created hereunder, and all replacements of such property, substitutions for such property, additions to such property,

9
#170745v2 – Open-End Mortgage

OR 1463 PAGE 0662

and the proceeds thereof (such property, replacements, substitutions, additions and the proceeds thereof being sometimes; herein collectively referred to as the "Collateral"); (ii) that a security interest in and to the Collateral is hereby granted by Mortgagor to Bank; and (iii) that all of Mortgagor's right, title, and interest therein are hereby assigned by Mortgagor to Bank; all to secure payment of the Liabilities and to secure performance by the Mortgagor of the terms, covenants and provisions hereof. In addition to any other rights and remedies of the Bank hereunder, the Bank shall have all the rights of a secured party under Chapter 1309 of the Ohio Revised Code. Furthermore, to the extent permitted by law, the Mortgagor hereby authorizes the Bank to sign and file financing statements and continuations at any time in respect of any of the Collateral, without such financing statements being executed by, or on behalf of, the Mortgagor, but the Mortgagor shall, at any time on request of the Bank, execute or cause to be executed financing statements in respect of any Collateral. The Mortgagor agrees to pay all filing fees, including fees for filing continuation statements in connection with such financing statements, and to reimburse the Bank for all costs and expenses of any kind incurred in connection therewith. This Mortgage shall also constitute a fixture filing under the Code for the portions of the Property that are fixtures.

(b)    Mortgagor agrees that, without the prior written consent of Bank, Mortgagor will not remove or permit to be removed from the Property any of the Collateral unless the same is replaced immediately with unencumbered Collateral of a quality and value equal to or superior to that which it replaces. All such replacements, renewals and additions shall immediately become subject to the security interests granted herein and be covered thereby. Mortgagor warrants and represents that all Collateral now is, and that all replacements thereof, substitutions therefore or additions thereto, and all proceeds therefrom, will be free and clear of liens, encumbrances or security interests of others.

19.    Events of Default.  Occurrence of any one of the following events shall constitute an "Event of Default" under this Mortgage: (a) breach, failure of payment or performance, or default by the Mortgagor of or under any of the terms, conditions, or covenants of this Mortgage, any of the Liabilities, or any of the Loan Documents, or any other instrument or agreement executed by the Mortgagor with or in favor of the Bank within the applicable grace or cure period, and for any such failure under this Mortgage, other than a payment failure, the failure to cure such failure within 30 days after notice thereof from the Bank; (b) breach, failure of payment or performance, or default by any obligor other than the Mortgagor of or under any of the terms, conditions or covenants of any of the Liabilities for which this Mortgage is given as security, or of any of the other Loan Documents, or of any other instrument or agreement executed by such obligor with or in favor of the Bank within the applicable grace or cure period; (c) the Mortgagor makes an assignment for the benefit of creditors, or a receiver, liquidator, or trustee is appointed for the Mortgagor or any of its property; (d) any proceeding under any insolvency or bankruptcy law is instituted by or against the Mortgagor or any action is taken to realize upon or any proceeding is instituted to foreclose any mortgage, security interest, or lien of any kind against the Property; (e) any representation, warranty, financial statement, report or other information made or furnished by or on behalf of the Mortgagor to the Bank at any time proves to be, or to have been, false or materially misleading when made or furnished; and/or (f) any substantial damage or destruction to the Property or the issuance or filing of any attachment,

10
#170745v2 – Open-End Mortgage

GR 1463 PAGE 0663

levy, garnishment or other judicial process or proceeding upon or in respect of the Mortgagor or the Property.

20. **Bank's Rights Upon Default.** Upon occurrence of an Event of Default all of the Liabilities (regardless of any contrary terms thereof) shall, at the option of the Bank, be immediately due and payable without demand or notice, and the Bank may take any one or more of the following actions not contrary to law: (a) foreclose this Mortgage by legal proceedings and collect its actual attorney fees as awarded by the Court; (b) sell, grant, and convey the Property, or cause the Property to be sold, granted and conveyed at public sale and to execute and deliver to the purchaser at such sale a good and sufficient deed or deeds of conveyance at law, pursuant to the statute in such case made and provided and out of the proceeds of such sale to retain the sums due under this Mortgage and all costs and charges of the sale (including, without limitation, the attorney fees provided by statute), rendering the surplus moneys, if any, to the Mortgagor or as otherwise provided by law, and in the event of a public sale and unless otherwise prohibited by law, the Property may be sold as one or more parcels, the Bank may sell the Property for cash and/or secured credit, and the Bank may give a warranty deed to the purchaser binding upon the Mortgagor and all claiming under the Mortgagor; (c) as to the Equipment and Fixtures and Rents and Accounts, exercise any of the rights and remedies of a creditor under the Uniform Commercial Code, any other law, and any Court Rule; (d) enter upon the Property and take other actions as the Bank deems appropriate to perform the Mortgagor's obligations under this Mortgage, to inspect, repair, protect or preserve the Property, to investigate or test for the presence of any hazardous materials, and/or to appraise the Property, each of the rights under this subparagraph being specifically enforceable since there is not adequate monetary remedy available to the Bank; (e) exercise any and all rights granted to the Bank herein or in any of the Liabilities; and/or (f) take any other action allowed by law or in equity.

Acceleration of the Liabilities as provided in this Mortgage shall trigger any applicable prepayment premium or formula. Without limiting when a prepayment premium may be due, it is agreed that, at any time after acceleration, a tender of payment of the amount necessary to satisfy the entire Liabilities by or on behalf of the Mortgagor or otherwise, must include any applicable prepayment premium or formula.

21. **Cumulative Remedies.** Every right and remedy provided in this mortgage shall be cumulative of every other right or remedy of Bank whether herein or by law conferred and may be enforced concurrently therewith and no acceptance of the performance of any obligation as to which Mortgagor shall be in default, or waiver of particular or single performance of any obligation or observance of any covenant, shall be construed as a waiver of the obligation or covenant or as a waiver of any other default then, theretofore or thereafter existing.

22. **Application of Payments After Default.** Notwithstanding anything to the contrary contained in this Mortgage or in any of the Liabilities, upon occurrence of an Event of Default under this Mortgage, any proceeds of any foreclosure, voluntary sale, or other disposition of the Property shall be applied by the Bank to reduction of the Liabilities in such order as the Bank shall determine in its sole judgment and the Mortgagor shall have no right to require the Bank to apply such proceeds to any specific Liabilities.

#170745v2 – Open-End Mortgage

OR I 463 PAGE 0664

23.   Subrogation.   Any transferee of, or endorser, guarantor or surety or other party providing security who pays the Liabilities secured hereby in full may take over all or any part of the Property and shall succeed to all rights of the Bank in respect thereto and the Bank shall be under no further responsibility therefor.   No party shall succeed to any of the rights of the Bank so long as any of the Liabilities remain unpaid to the Bank.

24.   Release of Security.   The Mortgagor agrees that the Bank may, without impairing the obligation of the Mortgagor hereunder:   release any other obligors or guarantors from their obligations to pay or perform the Liabilities; release any security of any obligor or guarantor of the Liabilities before or after maturity of any of the Liabilities; take, release or enforce its rights with respect to any of the Property without being obliged first to do so to any other security, whether owned by the Mortgagor or any other person; and agree with any obligor of the Liabilities to extend, modify, forbear or make any accommodations with regard to the terms of the Liabilities owed by such obligor.

If Mortgagor pays Bank all of the principal of and interest on the Notes, when and as the same shall become due and payable whether by acceleration or otherwise, and shall pay any and all other sums payable under the Notes, this Mortgage or any of the other Loan Documents, or secured by this Mortgage, then and in that case, Bank shall execute and deliver to Mortgagor at Mortgagor's cost, an appropriate release and discharge of this Mortgage in form to be recorded, whereupon the right, title and interest of Bank in the Property shall thereupon cease, determine and become void except warranties, covenants and indemnifications hereunder shall survive payment and shall not be terminated, released, discharged, extinguished or otherwise affected.

25.   No Consent.   Nothing in this Mortgage shall be deemed or construed in any way as constituting the consent or request by the Bank, express or implied, to any contractor, subcontractor, laborer, mechanic or materialman for the performance of any labor or the furnishing of any material for any improvement, construction, alteration or repair of the Property. The Mortgagor further agrees that the Bank does not stand in any fiduciary relationship to the Mortgagor.

26.   Indemnity.   In addition to payments of the Liabilities, Mortgagor agrees to indemnify, defend, pay and hold harmless the Bank and any holder of any of the Liabilities, and the officers, directors, employees, agents and affiliates of the Bank and such holders (collectively called the "Indemnitees") from and against any and all other liabilities, obligations, losses, damages, penalties, actions, judgments, suits, claims, costs (including, without limitation, settlement costs), expenses or disbursements of any kind or nature whatsoever (including, without limitation, the reasonable fees and disbursements of counsel for such Indemnitees in connection with any investigative, administrative or judicial proceeding commenced or threatened, whether or not such Indemnitee shall be designated a party thereto), which may be imposed on, incurred by, or asserted against that Indemnitee, in any manner relating to or arising out of this Mortgage and/or its enforcement, the Liabilities, the Bank's relationship with Mortgagor, the use or intended use of the proceeds of any of the Liabilities or any environmental matter relating to the Property (the "Indemnified Claims"); provided that Mortgagor shall have no obligation to an Indemnitee hereunder with respect to Indemnified Claims if it has been determined by a final decision (after all appeals and the expiration of time to appeal) by a court of competent jurisdiction that such Indemnified Claims arose primarily from the gross

CR 1463 PAGE 0665

negligence or willful misconduct of that Indemnitee.  To the extent that the undertaking to indemnify, defend, pay and hold harmless set forth in the preceding sentence may be unenforceable because it is violative of any law or public policy, Mortgagor shall contribute the maximum portion which it is permitted to pay and satisfy under applicable law, to the payment and satisfaction of all Indemnified Claims incurred by the Indemnitees or any of them.

27.   Environmental Laws.   (a) The Mortgagor represents and covenants that the Mortgagor has not used Hazardous Materials (as later defined) on or affecting the Premises in any manner which violates Environmental Laws (as later defined), that there is no condition concerning the Premises which could require remediation pursuant to Environmental Laws, and that, to the best of the Mortgagor's knowledge, no prior owner of the Premises or any current or prior occupant has used Hazardous Materials on or affecting the Premises in any manner which violates Environmental Laws.  The Mortgagor covenants and agrees that neither it nor any occupant shall use, introduce or maintain Hazardous Materials on the Premises unless done in strict compliance with all Environmental Laws; (b) the Mortgagor shall conduct and complete all investigations, environmental audits, studies, sampling and testing, and all remedial, removal and other actions necessary to clean up and remove all Hazardous Materials on or affecting the Premises, whether caused by the Mortgagor or a third party, in accordance with all Environmental Laws to the satisfaction of the Bank, and in accordance with the orders and directives of all federal, state and local governmental authorities, and the Mortgagor shall notify the Bank in writing prior to taking, and continually after that of the status of, all such actions. The Mortgagor shall, promptly upon the Bank's request, provide the Bank with copies of the results of all such actions and all related documents and information.  Any remedial, removal or other action by the Mortgagor shall not be deemed a cure or waiver of any breach of this paragraph 27 due to the presence or use of Hazardous Materials on or affecting the Premises. Additionally, the Mortgagor shall defend, indemnify and hold harmless the Bank, its employees, agents, shareholders, officers and directors, from and against any and all claims, demands, penalties, fines, liabilities, settlements, damages, costs or expenses (including, without limit, attorney fees) of whatever kind arising out of or related to (i) the presence, disposal, release or threatened release of any Hazardous Materials on, from or affecting the Premises or the soil, water, air, vegetation, buildings, personal property, persons or animals on the Premises, (ii) any personal injury (including, without limit, wrongful death) or property damage (real or personal) arising out of or related to these Hazardous Materials, (iii) any lawsuit brought or threatened, settlement reached or government order related to these Hazardous Materials, (iv) the cost of removal of Hazardous Materials from any portion of the Premises, (v) taking necessary precautions to protect against the release of Hazardous Materials on or affecting the Premises, (vi) complying with all Environmental Laws and/or (vii) any violation of Environmental Laws or requirements of the Bank, which are in any way related to Hazardous Materials including, without limit, attorneys and consultants' fees (the attorneys and consultants to be selected by the Bank), investigation and laboratory fees and environmental studies required by the Bank (whether prior to foreclosure, or otherwise).  Upon the request of the Bank, the Mortgagor and any guarantor shall execute a separate indemnity consistent with this paragraph; (c) the Mortgagor has never received any notice ("Environmental Complaint") of any potential violation of Environmental Laws with respect to the Mortgagor or the Premises (and, within five (5) days of receipt of any Environmental Complaint, the Mortgagor shall give the Bank a copy of it), and to the best of the Mortgagor's knowledge, there have been no actions commenced or threatened by any party with respect to the Mortgagor or the Premises for noncompliance with any

13

#170745v2 -- Open-End Mortgage

OR 1463 PAGE0666

Environmental Laws; (d) in the event this Mortgage is foreclosed or the Mortgagor tenders a deed in lieu of foreclosure, the Mortgagor shall deliver the Premises to the Bank, purchaser or grantee, as the case may be, free of Hazardous Materials so that the condition of the Premises shall not be a violation of any Environmental Laws; (e) upon ten (10) days notice to the Mortgagor (except in an emergency or where not practical under applicable law, in which case notice is waived), and without limitation of the Bank's other rights under this Mortgage or elsewhere, the Bank has the right, but not the obligation, to enter on the Premises and to take those actions as it deems appropriate to investigate or test for, clean up, remove, resolve, minimize the impact of or advise governmental agencies of the possible existence of any Hazardous Materials upon the Bank's receipt of any notice from any source asserting the existence of any Hazardous Materials or an Environmental Complaint pertaining to the Premises which, if true, could result in an order, suit or other action against the Mortgagor or any part of the Premises which, in the sole opinion of the Bank, could jeopardize its security under this Mortgage. Any such actions conducted by the Bank shall be solely for the benefit of and to protect the interests of the Bank and shall not be relied upon Mortgagor or any third party for any purpose. By conducting any such actions, the Bank does not assume control over the environmental affairs or operations of the Mortgagor nor assume any liability of the Mortgagor or any third party; (f) the provisions of this paragraph 27 shall be in addition to all other obligations and liabilities the Mortgagor may have to the Bank at common law or pursuant to any other agreement, and shall survive (i) the repayment of the Indebtedness, (ii) the satisfaction of all other obligations of the Mortgagor under this Mortgage and under the other Loan Documents, (iii) the discharge of this Mortgage, and (iv) the foreclosure of this Mortgage or acceptance of a deed in lieu of foreclosure.  For purposes of this Mortgage, (i) "Hazardous Materials" means each and all of the following: hazardous materials and/or substances as defined in any Environmental Law, asbestos, petroleum, petroleum by-products, natural gas, flammable explosives, radioactive materials, and toxic materials, and (ii) "Environmental Laws" mean any and all federal, state, local or other laws (whether under common law, by legislative action or otherwise), rules, policies, ordinances, directives, orders, statutes, or regulations an object of which is to regulate or improve health, safety, or the environment.

28.    Waiver of Marshalling.  In the event of foreclosure of this Mortgage or the enforcement by the Bank of any other rights and remedies under this Mortgage, the Mortgagor waives any right otherwise available in respect to marshalling of assets which secure the Liabilities or to require the Bank to pursue its remedies against any other assets or any other party which may be liable for any of the Liabilities.

29.    Reinstatement of Mortgage.  If any payment to the Bank on any of the Liabilities is wholly or partially invalidated, set aside, declared fraudulent, or required to be repaid to the Mortgagor or anyone representing the Mortgagor or the Mortgagor's creditors under any bankruptcy or insolvency act or code, under any state or federal law, or any common law or equitable principles, then this Mortgage shall remain in full force and effect or be reinstated, as the case may be, until payment in full to the Bank of the repaid amounts, and of the Liabilities. If this Mortgage must be reinstated, the Mortgagor agrees to execute and deliver to the Bank new mortgages, if necessary, in form and substance acceptable to the Bank, covering the Property.

30.    Miscellaneous.   The paragraph headings used in this Mortgage are for convenience only and shall not be used in the interpretation hereof.  All persons signing this

14
#170745v2 – Open-End Mortgage

OR 1 4 6 3 PAGE 0 6 6 7

Mortgage on behalf of a corporation, partnership, trust, limited liability company or other entity warrant to the Bank that they are duly and properly authorized to execute this Mortgage. Nothing in this Mortgage shall waive or restrict any right of the Bank granted in any other document or by law. No delay on the part of the Bank in the exercise of any right or remedy shall operate as a waiver. No single or partial exercise by the Bank of any right or remedy shall preclude any other future exercise of that right or remedy or the exercise of any other right or remedy. No waiver or indulgence by the Bank of any default shall be effective unless in writing and signed by the Bank, nor shall a waiver on one occasion be construed as a bar to or waiver of that right on any future occasion. Acceptance of partial or late payments owing on any of the Liabilities at any time shall not be deemed a waiver of any default. All rights, remedies and security granted to the Bank herein are cumulative and in addition to other rights, remedies or security which may be granted elsewhere or by law. Any inspection, audit, appraisal or examination of the Property by or on behalf of the Bank shall be solely for its benefit and shall not create any duty or obligation to the Mortgagor or any other person. Whenever possible, each provision of this Mortgage shall be interpreted in such manner as to be effective and valid under applicable law. If any provision hereof shall be declared invalid or illegal it shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of the provision or the remaining provisions of this Mortgage. Notice from the Bank to the Mortgagor, if mailed, shall be deemed given when mailed to the Mortgagor, postage prepaid, at the Mortgagor's address set forth at the beginning of this Mortgage or at any other address of the Mortgagor in the records of the Bank. The Bank may assign (or sell participations) in the Liabilities and any reference to the Bank shall include any holder of the Liabilities and any holder shall succeed to the Bank's rights under this Mortgage. This Mortgage shall bind the respective heirs, personal representatives, successors and assigns of the Mortgagor. If any payment applied by the Bank to the Liabilities is subsequently set aside, recovered, rescinded or otherwise required to be returned or disgorged by the Bank for any reason (pursuant to bankruptcy proceedings, fraudulent conveyance statutes, or otherwise), the Liabilities to which the payment was applied shall for the purposes of this Mortgage be deemed to have continued in existence, notwithstanding the application, and shall be secured by this Mortgage as fully as if the Bank had not received and applied the payment.  .All Mortgagor's indemnifications, warranties, representations and covenants set forth in this Mortgage shall survive delivery and recording of this Mortgage and payment of the Liabilities or termination of the Loan. "Loan Documents" shall have the same meaning as set forth in the Loan Agreement, defined herein.

31.   Joint and Several Obligations.   If two or more persons or entities execute this Mortgage as the Mortgagor, the obligations and grants of liens of such persons herein shall be joint, several, and individual.

32.   WAIVER OF JURY TRIAL.   MORTGAGOR AND THE BANK EACH HEREBY KNOWINGLY AND VOLUNTARILY, WITHOUT COERCION, WAIVE ALL RIGHTS TO A TRIAL BY JURY OF ALL DISPUTES BETWEEN THEM ARISING OUT OF THIS MORTGAGE, ANY OF THE LIABILITIES, OR ANY ALLEGED ACT OR NEGLECT OF THE BANK.

33.   Mechanic's Lien Laws.   Bank shall be and is hereby authorized and empowered to do as mortgagee, all things provided to be done in the mechanics lien laws of the State of Ohio

15
#170745v2 – Open-End Mortgage

OR 1 4 6 3 PAGE 0 6 6 8

(including Section 1311.14 of the Ohio Revised Code) and all Acts amendatory or supplementary thereto.

34.   **The Loan Documents.** The Liabilities secured by this Mortgage is also secured by an Assignment of Leases and Rents of even date herewith executed and delivered by Mortgagor to Bank, assigning, without limitation, the lessor's interest in and under all leases and subleases not or hereafter covering all or any portion of the Property, Assignment of Licenses, Permits, Contracts and Warranties, and Environmental Compliance and Indemnification Agreement. The term "Loan Documents" has the same meaning as set forth in the Loan Agreement.

35.   **Anti-Forfeiture.** Mortgagor hereby further expressly represents and warrants to Bank that there has not been committed by Mortgagor or, to Mortgagor's actual knowledge, any other person involved with the Property any act or omission affording the federal government or any state or local government the right of forfeiture as against the Property or any part thereof or any monies paid in performance of its obligations under the Notes or under any of the other Loan Documents, and Mortgagor hereby covenants and agrees not to commit, permit or suffer to exist any act or omission affording such right of forfeiture. In furtherance thereof, Mortgagor agrees to indemnify, defend and hold Bank harmless from and against any loss, damage or injury by reason of the breach of the covenants and agreements or the warranties and representations set forth in the preceding sentence. Without limiting the generality of the foregoing, the filing of formal charges or the commencement of proceedings against Mortgagor, Bank or all or any part of the Property under any federal or state law for which forfeiture of the Property or any part thereof or of any monies paid in performance of Mortgagor's obligations under the Loan Documents is a potential result shall, at the election of the Bank, constitute an Event of Default if such formal charges and the commenced proceedings, as applicable, are not dismissed within 30 days after the earlier of the filing of formal charges or commencement of such a proceedings.

IN WITNESS WHEREOF, the Mortgagor has executed this Mortgage on the day and year first above written.

Mortgagor:

PICKERINGTON 256 ARC, LLC,
an Ohio limited liability company

By: _____
Name: _____
Title: _____

OR 1463 PAGE 0669

STATE OF OHIO

COUNTY OF FRANKLIN

BEFORE ME, a Notary Public in and for said County and State, appeared ___Jason Gunzelly___ the ___Member___ of Pickerington 256 ARC, LLC, an Ohio limited liability company, who acknowledged that he executed the foregoing instrument in such capacity and the same was his free act and deed in such capacity and the free act and deed of the limited liability company.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at Columbus, Ohio, this 21 day of April, 2007.



_____
Notary Public
My Commission Expires: _____

LINDA S. BOOS
Notary Public, State of Ohio
My Commission Expires 11/22/2009

This Instrument was prepared by:  Steven P. Elliott, Esq., Wiles, Boyle, Burkholder & Bringardner, 300 Spruce Street, Floor One, Columbus, Ohio 43215-1173

18
#170745v2 – Open-End Mortgage

OR 1463 PAGE 0670

EXHIBIT A

LEGAL DESCRIPTION

TRACT 1

Situated in the State of Ohio, County of Fairfield and in the Township of Violet and the Village of Pickerington:

Situated in Section 29, T-16, R-20, Violet Twp., Fairfield County, Ohio and being part of a 17.92 acre tract of land to Emil Windmüller as recorded in Book 309, page 297, parcel 1 of said county records and being more particularly described as follows:

Commencing at an iron spike set in the centerline of S. R. 256 at the southwest corner of a 204 acre survey by Ahlers Surveying, which is South 85 degrees 30' 21" West, 1280.69 feet from a pin in the east line of Section 29; thence South 13 degrees 43' 00" East along said centerline 230.00 feet to a spike set; the true place of beginning of the herein described land; thence continuing along said centerline South 13 deg. 43' 00" East 207.07 feet to a spike set in said line; thence North 86 deg. 42' 02" West, 303.65 feet to a pin set; thence North 01 deg. 17' 58" East, along a line parallel to the east line of Section 29, 200.00 feet to a pin set; thence South 86 deg. 42' 02" East parallel to the south line of this tract 250.00 feet to the place of beginning. Containing 1.371 acres of land, more or less.

EXCEPTING THEREFROM that 0.274 acre tract conveyed to The City of Pickerington of record in Deed Book 637, page 616.

TRACT 2

Situated in the State of Ohio, County of Fairfield, City of Pickerington, being located in Section 29, Township 16, Range 20, Refugee Lands and being part of the 2.0703 acre tract conveyed to Phil H and Lynn B. Key, by deed of record in Deed Book 571, page 972, all referenced being to records in the Recorder's Office, Fairfield County, Ohio and being bounded and described as follows:

Beginning at a point in the westerly right-of-way line of State Route 256, at the southeasterly corner of said Phil H and Lynn B Key 2.0703 acre tract, the northeasterly corner of the 1.27 acre tract conveyed to Omega Oil Co., by deed of record in Deed Book 486, page 496;

Thence North 86 deg 37' 35" West, along the northerly line of said Omega Oil Co. 1.27 acre tract, a distance of 198.37 feet to an iron pin at the northwesterly corner of said tract;

Thence North 1 deg 04' 37" East, a distance of 51.02 feet to a point;

Thence South 88 degrees 37' 35" East, a distance of 101.94 feet to a point;

Thence South 74 deg 57' 29" East, a distance of 55.00 feet to a point;

Thence South 88 deg 37' 35" East, a distance of 33.00 feet to point in the westerly right-of-way line of State Route 256;

Thence South 13 deg. 43' 00" East, along said right-of-way line of State Route 256 (being 50 feet westerly, as measured at right angles and parallel with the centerline of State Route 256), a distance of 39.38 feet to the place of beginning, containing 0.207 acre, more or less.

Bearings contained herein are based on the bearing of the centerline of State Route 256 being South 13 deg. 43' 00" East.

UR I 463 PAGE 0 671

Together with the right to use the the roadway easement located north of and adjacent to the above described 0.207 acre tract, as described in the deed from Phil H Key and Lynn B Key to Gary L. Schulein, containing 0.734 acre and 0.974 acre.

Being also described as 0.907 acres and 0.205 acres together with a 24 foot ingress/egress easement in legal descriptions of Roger P. Arnold, Professional Surveyor No. 6065.

LEGAL DESCRIPTION OF 0.997 ACRES OF LAND

Situated in the State of Ohio, County of Fairfield, Township of Violet, Village of Pickerington, located in Section 29, Township 16, Range 20, Refugee Lands, being part of a 17.92 acre tract of Emil Whulmiller as recorded in Deed Book 309, page 297, at the Fairfield County Recorder's Office, Fairfield County, Ohio, said 0.997 acre tract of land being more particularly described as follows:

Beginning for reference at a point, said point being located at the southeasterly corner of a 0.274 acre tract of land belonging to The City of Pickerington, of record in Deed Book 367, page 616 at the Fairfield County Recorder's Office, Fairfield County, Ohio, said point also being located in the centerline of Hill Road (State Route 256), Thence 88 deg. 42' 02" West, a distance of 67.63 feet to an iron pin (set), said iron pin being located in the westerly right-of-way line of said Hill Road said iron pin being located at the southwesterly property corner of said 0.274 acre tract, said iron pin also being located at THE TRUE POINT OF BEGINNING;

Thence from said TRUE POINT OF BEGINNING, North 88 deg 42' 02" West a distance of 236.02 feet to an iron pin (found);

Thence North 01 deg. 17' 58" East, a distance a 200.00 feet to an iron pin (set);

Thence South 88 deg. 42' 02" East, a distance of 198.23 feet to a P.K. Nail (set), said nail being located at the northwesterly corner of said 0.274 acre tract, said nail also being located in the said westerly right-of-way line of said Hill Road;

Thence South 09 deg. 23' 59" East, along the said westerly right-of-way of said State Route 256, a distance of 203.54 feet to the point of beginning and containing 0.997 acres of land, more or less.

LEGAL DESCRIPTION OF 0.205 ACRES OF LAND

Situated in the State of Ohio, County of Fairfield, Township of Violet, Village of Pickerington, located in Section 29, Township 16, Range 20, Refugee Lands, and being part of a 2.0703 acre tract of land conveyed to Phil H and Lynn B Key, by deed of record in Deed Book 571, page 972, at the Fairfield County Recorder's Office, Fairfield County, Ohio, said 0.205 acre tract of land being more particularly described as follows:

Beginning at a P. K. Nail (set) in the westerly right-of-way line of State Route 256, at the southeasterly corner of said Phil H and Lynn B Key 2.0703 acre tract, the northeasterly corner of the 1.27 acre tract conveyed to Omega Oil Co., by deed of record in Deed Book 486, page 496;

Thence North 88 deg 42' 02" West, along the northerly line of said Omega Oil Co. 1.27 acre tract, a distance of 198.23 feet to an iron pin (set), said iron pin being located at the northwesterly corner of said 1.27 acre tract;

Thence North 01 deg 17' 58" East, along the westerly line of said herein described 0.205 acre tract, a distance of 51.02 feet to a drill hole (found), said drill hole being located at the northwesterly corner of said herein described 0.205 acre tract;

OR 1463 PAGE 0672

Thence South 86 degrees 24' 14" East, along the northerly line of said herein described 0.205 acre tract, a distance of 101.84 feet to a etched cross in the concrete curb (found);

Thence South 74 deg 44' 08" East, continuing along said northerly line, a distance of 55.00 feet to an iron pin (found);

Thence South 88 deg 24' 14" East, continuing along said northerly line, a distance of 33.00 feet to an iron pin (set), said iron pin being located in the westerly right-of-way line of said State Route 256, said iron pin also being located at the northeasterly corner of said herein described 0.205 acre tract;

Thence South 13 deg 41' 24" East, along the said westerly right-of-way line of said State Route 256, a distance of 38.35 feet to the point of beginning and containing 0.205 acre of land, more or less.

FURTHER DESCRIBED ON THE ATTACHED SURVEYOR LEGAL

DESCRIPTION OF 24 FEET INGRESS/EGRESS EASEMENT

Situate in the State of Ohio, County of Fairfield, Village of Pickerington, Section 29, Township 16, Range 20 of the Refugee Lands, and being easements around and through a tract of land conveyed to Emil Windmiller and Anne G. Windmiller by deed of record in Deed Book 580, page 450 of the Recorder's Office, Fairfield County, Ohio.

Ingress/Egress Easement

Beginning at a found iron pin in the northerly property line of the Emil & Anna Windmiller above described property and the southwest corner of the Omega Oil Co. tract as described by Deed in Volume 486, page 496, said iron pin being the TRUE PLACE OF BEGINNING of the description;

Thence South 84 deg 42' 17" East, a distance of 236.11 feet to a found iron pin;

Thence South 06 deg 46' 30" East, A distance of 80.00 feet to the termination point of the easement description;

Thence South 83 deg 13' 30" West, a distance of 24.00 feet to a point;

Thence North 06 deg 46' 30" West, a distance of 60.59 feet to a point;

Thence North 84 deg 42' 17" West, a distance of 216.64 feet to a point;

Thence North 05 deg 08' 47" East, a distance of 24.00 feet returning to the TRUE PLACE OF BEGINNING and containing 0.1635 acres, more or less.

Together with easement granted to Omega Oil Company of record in Deed Book 486, page 498 and Deed Book 486, page 501.

Parcel No: 041-03866.10 and 041-03866.61

OR 1 4 6 3 PAGE 0 6 7 3



## Civil & Environmental Consultants, Inc.
8740 Orion Place, Suite 100 ▪ Columbus, Ohio  43240
Phone 614.540.6633 ▪ Fax 614.540.6638
CHICAGO, IL. ▪ CINCINNATI, OH ▪ EXPORT, PA. ▪ INDIANAPOLIS IN.
NASHVILLE, TN. ▪ PITTSBURGH, PA. ▪ ST. LOUIS, MO.

DESCRIPTION OF A
1.204 ACRE TRACT
LOCATED WEST OF HILL ROAD NORTH (ST RT 256)
NORTH OF REFUGEE ROAD (ST RT 7)
CITY OF PICKERINGTON, FAIRFIELD COUNTY, OHIO

Situated in the State of Ohio, County of Fairfield, Township of Violet, City of Pickerington, Section 29, Township 16, Range 20, Refugee Land, and being a 0.977 acre tract and a 0.207 acre tract conveyed to Pickerington 256 ARC, LLC, by deed of record in Official Record Volume 1361, Page 220, all records herein are from Recorder's Office, Fairfield County, Ohio, said 1.204 acre tract being more particularly described as follows;

BEGINNING WITH THE TRUE POINT OF BEGINNING, at an iron pin found at the northeast corner of a 10.468 acre tract conveyed to Hill Road Plaza, LLC, by deed of record in Official Record Volume 666, Page 804 and being on the westerly right-of-way line of said Hill Road North (St. Rt. 256) (r/w varies);

Thence North 86°04'42" West, a distance of 236.02 feet, following along the northerly line of said 10.468 acre tract, to a set iron pipe on the east line of a 0.988 acre tract conveyed to Harry M. Shumaker & Karen K. Shumaker Revocable Trust., by deed of record in Official Record 686, Page 894;

Thence North 03°55'38" East, a distance of 200.00 feet, following along the east line of said 0.988 acre tract, to a found rebar at the northeast corner of said 0.988 acre tract common to the southeast corner of a 0.734 acre tract conveyed to Saundra Mahon, by deed of record in Official Record 1322, Page 1563;

Thence North 03°37'50" East, a distance of 51.02 feet, following along the east line of said 0.734 acre tract, to a set iron pipe on the southerly line of a 0.974 acre tract conveyed to GE Capital Franchise Finance Corporation, by deed of record in Official Record 1432, Page 1943;

Thence the following three (3) courses and distance along the south line of said 0.974 acre tract;

1. South 86°04'22" East, a distance of 101.94 feet, to a set iron pipe;

2. South 72°24'16" East, a distance of 55.00 feet, to a set iron pipe;

3. South 86°04'22" East, a distance of 33.00 feet, to a set iron pipe on the westerly right-of-way line of said Hill Road North common to the southeast corner of said 0.974 acre tract;

OR 1 4 6 3 PAGE 0 6 7 4

Thence the following two (2) courses and distance along the westerly right-of-way line of said Hill Road North;

1.  South 10°57'56" East, a distance of 39.34 feet, to a set iron pipe;

2.  South 06°46'19" East, a distance of 203.54 feet, to the TRUE POINT OF BEGINNING containing 1.204 acres more or less. Being subject to all easement, restrictions and rights-of-way of record.

The bearings were based in State Plain Coordinate System as being South 86°03'32" East from Franklin County Monument 2220 to Franklin County Monument 9941.

All iron pins set are 3/4" iron pipes, 30 inches in length with an ID cap stamped "CEC PORP CORNER".

This description was based on an actual field survey by Civil & Environmental Consultants in September 2006.

Civil & Environmental Consultants, Inc.

Jerry A. Malott    10-09-06
Registered Surveyor No. S-5963    Date

S:\pro\061773\survey\data\1.204acres.doc

OR 1463 PAGE 0675

## EXHIBIT "B"

### PERMITTED EXCEPTIONS

1. Taxes for Parcel No. 041-03866.10 for the second half of 2006 not yet due, unpaid, payable and a lien on the premises. Taxes for 2007 are undetermined, not yet due, and a lien on the premises. Other special taxes and assessments of any kind, if any.

2. Taxes for Parcel No. 041-03866.61 for the second half of 2006 not yet due, unpaid, payable and a lien on the premises. Taxes for 2007 are undetermined, not yet due, and a lien on the premises. Other special taxes and assessments of any kind, if any.

3. Easement to Fairfield County of record in OR Volume 595, Page 189, Recorder's Office, Fairfield County, Ohio.

4. Easement to Fairfield County of record in OR Volume 595, Page 505, Recorder's Office, Fairfield County, Ohio.

5. Easement to The State of Ohio of record in OR Volume 637, Page 618, Recorder's Office, Fairfield County, Ohio.

6. Easement to Columbus Southern Ohio Electric Co. of record in OR Volume 486, Page 79, Recorder's Office, Fairfield County, Ohio.

7. Easement to Omega Oil Co. of record in OR Volume 486, Page 498, Recorder's Office, Fairfield County, Ohio.

8. Easement to Omega Oil Co. of record in OR Volume 486, Page 501, Recorder's Office, Fairfield County, Ohio.

9. Easement to The Ohio Bell Telephone Co. of record in OR Volume 648, Page 594, Recorder's Office, Fairfield County, Ohio.

10. Easement agreement of record in OR Volume 647, Page 512, Recorder's Office, Fairfield County, Ohio.

11. Easement to Omega Oil Company of record in OR Volume 595, Page 191, Recorder's Office, Fairfield County, Ohio.

171603v1 - Pickerington